## Chicago Edison Company v. William H. Hudson.

1. Negligence—*Failure of Master to Warn Servant of Danger.*— A master is bound to inform his servant of all dangers incident to the service of which he (the master) is, or could by the exercise of ordinary care be informed, and which are unknown to the servant and can not be readily ascertained except by a person possessed of peculiar knowledge which the master has no reason to suppose the servant possesses, and if he fails to do so he is liable to the servant for all the consequences resulting from the lack of such warning.

2. Same—*A Servant has a Right to Rely upon Statements Made by a Foreman.*—In a suit where the plaintiff was working near wires charged with electricity, and was informed by defendant's foreman that the wires were not dangerous and that it was not unsafe to come in contact with them, *it was held* that plaintiff had a right to rely upon such statement and could recover for injuries resulting from contact with the wires.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. Charles G. Neely, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 30, 1896.

### Statement of the Case.

The facts of this case briefly stated are, that Hudson, the appellee, had in early life been a carpenter; worked in a store in Michigan for eleven years; again worked as a carpenter; last before his employment with appellant was em-

ployed as a carpenter in South Englewood, Chicago, on a business block and flats. He applied for a position with appellant, and went to work about May 9, 1893. He was then about fifty years old. He worked in appellant's carpenter shop, at 144 Wabash avenue, a little over a week, making office desks. He had also had experience in cabinet making. When employed there was no written contract, and nothing was said as to his working continuously in any particular place or at any particular work. After working in the carpenter shop on Wabash avenue a little over a week, he went to Twenty-seventh street and did general work, among other things, making switchboards to put electric wires on, and putting up the switchboards into place there.

When he changed from Wabash avenue to Twenty-seventh street, he changed voluntarily, making no objection whatever to the change, and never objected at any time to doing any of the work required of him. He worked on Twenty-seventh street until June 21, 1893. On that day he was engaged in putting up a switchboard near the top of the building in which he was working. To do this, he and an associate stood on a scaffold, about eighteen feet above the concrete floor. The switchboard was to be placed just above four electric light strips of copper. These strips were about half an inch wide and one-fourth of an inch thick. They were parallel, ten or twelve inches apart, on a level with each other; they ran north and south, and the scaffold on which appellee and his associate stood ran east and west. Jones, the foreman, went upon the scaffold with appellee and appellee's associate, whose name was Cobb. Jones explained to them that the electricity was turned on two of these strips; the other two not.

Appellee noticed that the strips were bare of covering, and told Jones that he was afraid to work around them, as they were not covered. Appellee supposed the wires were charged and was afraid he might get a shock. Jones replied that if they touched them it might startle them, but would not hurt them, and to prove his opinion, Jones took hold of

two of the wires, but dropped them instantly. Appellee says that he then supposed Jones did that to show them it would not hurt to get hold of the strips; that notwithstanding what Jones said, appellee did not believe him, but continued to be afraid of getting hurt by the wires or strips.

After what Jones had said, appellee says he was careful to take hold of but one at once, and that he watched out for them; that after Jones went away, appellee told Cobb that he believed the wires would hurt if one got hold of them, and that he didn't like them; that he was afraid of them; that Cobb then tried them by taking hold of them the same way as Jones, but that Cobb didn't touch them very heavy, and after that appellee tried to keep clear of them. After working for some time on the scaffold, and exercising care to avoid touching the wires, because of his belief that they would hurt him if he did, appellee undertook to get down from the scaffold on the step-ladder, for the purpose of getting a drink of water, and in doing so took hold of the wires, or at least one wire, and stooping to pass under them, raised his head up a little and touched the other wire, making a circuit, lost consciousness, and fell, injuring him.

The case was submitted to the jury, who returned a general verdict of guilty and damages $800. Three special questions were put to the jury, and answered as follows :

" 1.   Did the plaintiff, at and before the time of his injury, know and understand that there was a risk of receiving injury by coming in contact with the wires or bars in question ?

A.   Yes.

2.   Did plaintiff, at and before the time of his injury, believe that there was danger of his being hurt if he came in contact with the wires and bars in question ?

A.   Yes.

3.   Did plaintiff, at and before the time of his injury, believe the statement of Jones that the wires or bars in question were not charged sufficiently strong to injure

plaintiff, and did plaintiff rely upon that statement and continue to work in the belief that there was no such danger?

A.    Did not believe the statement of Jones.    Yes."

The errors here assigned, are:

" 1.    That the court refused to instruct the jury to return a verdict of not guilty at the close of the plaintiff's case.

2.    Refused to direct a verdict of not guilty at the close of all the evidence.

3.    Refused to grant a new trial on the ground that the court had refused to instruct the jury to return a verdict of not guilty at the close of plaintiff's evidence.

4.    Refused to grant a new trial on the ground that it had erred in refusing to direct a verdict of not guilty at the close of all the evidence."

Appellant makes the following statement:

" We ask for no new trial of this case. We ask only to have the case reversed without remanding. We concede that if appellee is entitled to recover at all, he is entitled to recover the amount of the judgment; and if this court, on this record, finds that appellee, in any count of his declaration, has stated a case entitling him to recovery, and the case so stated be proved, or, in other words, if the evidence makes out a case for appellee under any good count filed in the case, then the judgment should be affirmed; but, if not, the judgment should be reversed without remanding the case."

JOHN A. POST and ISHAM, LINCOLN & BEALE, attorneys for appellant; SAMUEL S. PAGE, of counsel.

SCOTT O. CAVETTE, attorney for appellee; M. L. THACKABERRY, of counsel.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The master is bound to inform his servant of all dangers incident to the service, of which he, the master, is cognizant, or of which, in the exercise of ordinary care on his part, he

would be informed; he is bound to warn the servant of all latent or extraneous dangers of which he himself has knowledge, or of which, in the exercise of ordinary care, he would be informed; and if he fail in this respect, he is liable to the servant for all the consequences resulting to him from the lack of such warning.

This rule applies to dangers of which the master himself is aware, or ought to know, and which are unknown to the servant, and would not be readily ascertained except by a person possessed of peculiar knowledge, which the master has no reason to suppose the servant possesses. Dangers which are the result of common knowledge, which can readily be seen by common observation, the servant assumes the risk of, but when the danger to be avoided requires a knowledge of scientific facts, an ordinary servant is not presumed to have knowledge of them, and it is the duty of the master, knowing of them, to inform the servant in respect thereto. Wood on Master and Servant, pp. 714, 721, 723; Smith v. Peninsula Car Works, 60 Mich. 501–505; Atkins v. Merrick Thread Co., 142 Mass. 431–433; Ill. Cent. Ry. Co. v. Welch, 52 Ill. 183–186; Britton v. G. W. Cotton Co., L. R. 7th Exch. 130.

Applying the foregoing to the present case, we think the jury was warranted in concluding that appellant, by the exercise of reasonable care, would have known of the danger to which appellee was exposed, and that appellee, a carpenter, is not to be presumed to have understood the risk he ran. Although appellee saw that the wires were not insulated, yet there was nothing in their appearance to indicate that there was passing along them a current dangerous to life, and appellee, being informed by appellant's foreman that the wires were not dangerous, and that it was not unsafe to come in contact with them, had a right to rely upon such information.

As the case is here presented, we do not see how any person, except one at the place where the electric current passing over these wires was generated, could have known how powerful it was, or what risk one ran who might receive a

shock therefrom. Appellant knew that it was operating a dangerous force; that men are not infrequently killed by electric currents used for lighting purposes; that the injury which may be received from an electric current sent over wires, varies with the condition of the atmosphere and the bodily state of him who receives the shock.

The jury had a right to conclude that the knowledge of appellant as to all these matters was much greater than that of appellee; and it was not necessary, upon the trial of this cause, that appellee should show that accidents from electric currents had before happened under similar circumstances.

The declaration is inartistic, yet we think is, after verdict, sufficient to sustain the judgment rendered thereon.

Believing from an examination of the record that the jury was warranted in finding that appellee, while in the exercise of ordinary care, received, through the negligence of appellant, the injury complained of, the judgment of the Circuit Court is affirmed.