J. M. GRIFFIN & SONS, INC. *v.* NEWTON BUTANE GAS & OIL CO., et al.

In Banc. Feb. 12, 1951.

No. 37744 (50 So. (2d) 370)

798

O. B. Triplett, Jr., C. E. Johnson, Lyle V. Corey, and Broach & Ethridge, for appellants.

**Leon F. Hendrick,** for Newton Motor Company.

801

**Snow & Covington,** for Newton Butane Gas & Oil Company.

**Alexander, J.**

Appellant is in the sawmill business. It desired to have a butane gas tank near its mill moved to a new location. To this end it sought the services of the butane company but was by it informed that it did not have suitable facilities but that it would engage the appellee, the Newton Motor Company, to move it with a wrecker truck. The latter company agreed to undertake the job provided a representative of the butane company went along. Under direction of the latter, a chain was at-

tached to a lifting lug on one end of the tank and hoisting operations begun. The effect of this procedure was that the tank was dragged across one of two heavy transverse beams upon which it was cradled, a protruding valve was sheared from its position near its lowest point, and a large quantity of butane gas spewed out, which, being wafted toward the mill, caught fire, totally destroying it. For such damage suit was brought against the butane company and the motor company. From a verdict and judgment for the appellees, the sawmill company appeals.

In recognition of the presumption supporting the correctness of the judgment, we state the following factual background favorably to appellees although there is frequent substantial conflict.

The tank was owned and had been supplied by the butane company. It had filled it to about four-fifths capacity a short while before the fire. At the time it contained about two hundred gallons of fuel and the gauge registered seventy per cent full. This gauge was on top of the tank and visible with slight effort.

A representative of appellant had assured the butane company that the tank was empty. Such information was, in the presence and hearing of an officer of appellant, later conveyed by telephone to the motor company. As stated, this latter company was unwilling to undertake the task unless an experienced butane man accompanied its driver and such condition was met.

The foreman of appellant knew that the tank was not empty and upon observing the appellees in the act of moving the tank, made as if to go to the scene but a mishap in the mill deflected his purpose. Although the contention is made that the foreman had intended to warn them of the presence of gas, his expressed purpose was to suggest that another tank, concededly empty, be first dragged out of the way.

In view of the conclusions we have reached, we find it unnecessary to go further into the testimony.

The question for decision is succinctly, and we think correctly, stated to be whether the appellees were entitled implicitly to rely upon the representation that the tank was empty. Otherwise put, must a defendant who is in the business of selling and distributing butane gas, cultivate an habitual and prudent skepticism of any assurances other than those of his own sense and senses? The negative of such view is presented by several instructions granted on behalf of the appellees. At this point we summarize them as authorizing a verdict for the defendants if the jury believed from the evidence that the sawmill company told the defendants that the tank was empty. This means, of course, that the defendants had a legal right to rely thereon and that they had no legal duty to verify the facts. Variations upon this theme include the equal right of the motor company to rely absolutely upon such assurance even though the information was relayed to it; the absence under such circumstances of any duty to inspect; and that reliance upon such assurance of safety is an acquittal of negligence.

Certainly, regardless of whether the defendants are negligent the plaintiff was clearly so, for its servant and foreman knew the tank contained gas and was aware of the exposure of the defendants and of itself to such danger, and there was a substantial responsibility upon appellant to assure itself that the tank was empty.

No doubts should impair the reasonable view that an assurance of safety by a plaintiff is always a credit upon the obligation owed by a defendant to comply with a duty to use reasonable care. To enact by judicial fiat a universal rule that this debt is thereby liquidated would imprison the functions of the jury within an artificial concept since relevant factors would involve the relative capacity of the parties to know or appreciate the danger or to speak with knowledge; the source from which the assurance comes; and the hazards at stake. Wherefore, we restrict our decision to the particular factual situation

here presented, wherein stress is laid upon the incident that the assurances were put forward by the plaintiff.

Granting of the following instructions for the defendants is assigned for error: "The court instructs the jury for the defendant, Newton Motor Company, that if the jury believes from a preponderance of the evidence that the defendant, Newton Butane Gas and Oil Company, had been told that the tank was empty and was ready to be moved, then this defendant, Newton Motor Company, had an equal right to rely on that information."

"The Court instructs the jury for defendant, Newton Butane Gas and Oil Company, that said defendant had the right to rely on any information, if any, given to it by Billie Griffin as to the condition of the tank to be moved, and if you believe from a preponderance of the evidence that Billie Griffin advised Robert Weir at the time he requested the tank be moved, if he so requested, that the tank had been disconnected, was empty, and was ready to be moved, then Newton Butane Gas and Oil Company had the right to rely upon such information and it was not guilty of negligence in so doing."

Both instructions lay down the principle that the defendants were entitled to rely upon the assurances of safety made by the plaintiff. Appellant contends that the assertion that the tank was empty, disconnected, and ready to be moved, was not sufficient to divest appellees of all responsibility to use reasonable care and that they were, under the circumstances, bound to accept such assurance with a degree of skepticism which required a verification of the truth of the guaranty.

As stated in Orr v. Columbus & Greenville R. Company, 1950, Miss., 48 So. (2d) 630, 633, ██ ██ "The initial inquiry in every negligence case is not whether the plaintiff was negligent, but whether the defendant was." ██ ██ Assuming that the appellees were under a duty to use reasonable care, violation of this duty must cause injury to one to whom such duty was owed. Here, of course, a duty would initially be owed to anyone lawfully within

the area who would be exposed to foreseeable danger. Yet, since a tort is an unlawful violation of a private legal right, it is important to examine whether at the time of the injury appellant had waived such right, or stated conversely, whether appellees had been absolved of their duty.

No legal wrong is done to one who consents. Here, the appellant not only consented that the tank be moved in its then condition but requested that it be done. In no strained sense appellant moved the tank. The defendants, without countervailing knowledge, were under no duty to protect appellant against the consequences of its own imprudence. The rights of appellant were neutralized by its consent, fortified as it was by a warranty of safety, which, emanating from the appellant itself, furnished a measure of assurance which the normal duty to use requisite care would demand. In other words, the appellees were acquitted of responsibility by the assumption of such responsibility by appellant. It was not unreasonable prudence to rely upon the avowals by the person who was chiefly interested, whose safety was at stake, and who was in a position and under a duty to know the facts.

The risk of this operation was therefore assumed by the appellant. The appellees thereafter acquired no knowledge refuting the information given them. The rationale of such principle appears in cases where a servant has been immunized against a defense of assumption of risk by the assurances of the master as to safety. In such cases, the master, by assuming the responsibility for inspection, takes over also the risk. Compare Pearl River V. R. Company v. Moody, 178 Miss. 1, 171 So. 769. It requires little adaptation of the common law rule that the master is not under a duty to use more care for the protection of the servant than the servant for himself, Priestley v. Fowler, 3 M. & W. 1, to charge the appellant with at least as much care for itself as the defendants should exercise for it.

The fact of consent by a plaintiff to conduct of a defendant is not strictly a defense to negligence, but rather negatives the existence in the defendant of any negligence at all. Prosser, Torts, p. 117. The appellant was under this record and the finding of the jury guilty of negligence, but it is not contributory negligence for there is none on the part of the defendants to which it could contribute.

We do not, however, treat this as a case of master and servant. The suggested analogies, however, do point up the principle that a duty of inspection—which was the only existing responsibility—was asserted and assumed by the appellant. The principle has been often applied in such cases. McKee v. Tourtellotte, 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542; Brown v. Lennane, 155 Mich. 686, 118 N. W. 581, 30 L. R. A., N. S., 453; Manks v. Moore, 108 Minn. 284, 122 N. W. 5; Denning v. Gould, 157 Mass. 563, 32 N. E. 862; Chicago Edison Company v. Hudson, 66 Ill. App. 639; Chadwich v. Brewsher, 61 Hun. 620, 15 N. Y. S. 598; Warner v. Chicago R. I. & P. R. Company, 62 Mo. App. 184, 192.

Whether the appellees were the servants or the agents or the alter ego of appellant need not be delved into for the reasoning is the same. For example, in Miss. Public Service Commission v. Bassett, 184 Miss. 6, 184 So. 419, 422, one Bassett had been employed to erect a building including installation of gas piping. He installed a pipe into the kitchen, which was later thrust back beneath the floor, leaving it open and uncapped. An explosion, to which gas escaping from this pipe contributed, wrecked the building. Bassett and the owner sued the service company which had supplied gas to the building, and one Dill who had connected to the system a gas heating furnace. When gas was finally piped into the building, Dill searched every room to see whether there were any exposed pipes or outlets. He had been informed by Bassett that there were no other outlets than the one in the furnace room. In denying any re-

covery against Dill, this Court said: "As to the claim for damages made by the appellee Bassett, the contractor, the requested peremptory instruction should have been granted in favor of both of the appellants. He cannot take advantage of his own gross negligence under the circumstances hereinbefore related and complain of the failure of the appellants to find the hidden danger which his act had proximately and primarily occasioned. Knowing that no inspection of the gas piping installed by him had been made as required by the city ordinances, and that the gas was being made available for the use of the owner who was preparing to move into the building, and also knowing that this uncapped and open pipe was exposed beneath the kitchen flooring, his failure to inform either the gas comany, the owner or the appellant Dill that this pipe was still uncapped, he can not be heard to complain of the damages inflicted by the explosion caused as a result of such gross negligence on his part."

Scarborough v. Central Arizona L. & P. Company, 58 Ariz. 51, 117 P. (2d) 487, 138 A. L. R. 866, and Richmond v. Virginia Bonded Warehouse Corporation, 148 Va. 60, 138 S. E. 503, 509, 54 A. L. R. 1485, cited by both parties, support the contention of appellees. In the latter case, the Grinnell Company had been employed by the warehouse to install a sprinkler system. Grinnell made inquiry of the City of Richmond whether the water into the building had been cut off and was advised that this had been done. It also informed the president of the warehouse of the necessity for having the water cut off when final connection was to be made, and the officer assumed the responsibility of having it done. The opinion states: (the president) " 'relied on the city to turn the water off,' and the Grinnell Company relied on the report of his superintendent that the city people said 'they had cut the water off and to go ahead and make his connection'. This was all the care required of the Grinnell Company. It was not required to exercise

meticulous care, but only ordinary care. The city alone had the right to cut the water off, and when its employees reported the water had been cut off, the Grinnell Company had the right to rely upon that report. Business could not be conducted if every one had to act only on personal knowledge of every fact that entered into the basis of his action, or if he had to test or verify the correctness of statements or reports which came from a proper and reliable source.''

■■ At the outset, the appellees owed a duty to appellant and the latter owed an equal duty to itself. Thereupon, the appellant voluntarily undertook to discharge both obligations. Since the appellees had a right to rely on the assurance, they had no duty to do that of which the act of appellant had absolved them. *Volenti non fit injuria.*

■■ Instruction number thirteen authorized a verdict for the defendants if the jury believed the fire ''was the result of a simple accident and without negligence'' on the part of the defendants. Use of the word ''accident'' should be avoided in instructions, for its connotation in law is technical beyond the popular comprehension. Injuries which are *damnum absque injuria* are safely termed accidents since absence of negligence or legal right is implied. But here the defendant adds the saving qualification ''and without negligence on the part of defendants''. We find no error here.

We have examined the other assignments, including the refusal of certain instructions, and find no reversible error therein.

Affirmed.

**Lee, J.**, took no part in the consideration or decision.