397 So.2d 891 (1981)
Bennie M. DUNCAN
v.
COAHOMA BANK, a Branch of the Grenada Bank, and Mark Foster.
No. 52585.
Supreme Court of Mississippi.
May 6, 1981.
John Kirkham Povall, Jacobs, Griffith, Pearson, Eddins & Povall, Cleveland, for appellant.
Roy D. Campbell, Jr., Campbell & DeLong, Greenville, William R. Bradley, Maynard, Fitzgerald & Bradley, Clarksdale, for appellees.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
Bennie M. Duncan filed suit against Coahoma Bank, a Branch of The Grenada Bank, and its loan officer, Mark Foster, and charged that the bank's exercise of its written contractual right of set-off was wrongful or tortious; that because of the wrongful exercise of the right of set-off plaintiff was subjected to mental stress which caused him to have a heart attack; and that defendants were liable for damages for plaintiff's heart attack.
*892 After the jury returned a verdict for $30,000 against defendants, the trial judge sustained defendants' motion for judgment notwithstanding the verdict, set aside the jury verdict, granted a judgment for the defendants, and plaintiff appealed.
Plaintiff purchased a 1971 Audi automobile on January 23, 1976, and borrowed $1,967 from the bank to pay for the automobile. On the same day plaintiff executed an installment note to the bank payable in twenty-four monthly installments of $94.22 each, beginning March 5, 1976, and secured the note with the automobile as collateral.
The automobile was unsatisfactory and plaintiff was forced to make extensive repairs to it. He was unable to make payments on the note as scheduled because of the expense of repairs to the automobile. After attempting unsuccessfully to sell the automobile, plaintiff delivered the car to Foster who agreed to try to sell the automobile. The bank, acting through its agent, Foster, was unable to sell the automobile and stored it with a third party. While in possession of the third party, the automobile was severely damaged by unknown persons who removed many parts from it.
On December 30, 1977, plaintiff executed a renewal note at the request of the bank payable in twenty-four monthly installments of $78.93 each beginning February 5, 1978. Plaintiff made two payments on the renewal note and when he delivered the automobile to the bank he had permitted the insurance to lapse.
Both notes contained the following provision:
Each maker, co-maker, endorser, surety and guarantor hereof jointly and severally agrees to pay this note and guarantees payment hereof and waives demand, presentment, protest and notice of dishonor, and consents to any extensions and renewals hereof without notice, and consents to the release by the holder hereof with or without consideration of any of them, and exonerates the holder hereof from all duty and obligation to make demand on anyone for payment of any collateral now or hereafter securing this note or to give notice to anyone of non-payment thereof or to collect or sell the same and consents to the extension, renewal, exchange, surrender or release by the holder hereof with or without consideration of any such collateral, and agrees that when or at any time after this note becomes due the holder hereof may without notice setoff or charge this note against any deposit account or other account then maintained by any of them with the holder hereof or then existing between any of them and the holder hereof and to pay any deficiency, and agrees in case of any default to pay all costs of collection, including reasonable attorney's fees, and the late charges listed in the "Rebate & Default" section on the other side.
In February, 1978, plaintiff opened a savings account with the bank with a deposit of $6,300. By October 24, 1978, the balance in that account had been reduced to $1,710.10 by withdrawals made by the plaintiff.
On October 24, 1978, Foster, as agent for the bank, made the decision to set-off the balance due on plaintiff's note against plaintiff's savings account because the note was past due, plaintiff was depleting his savings account by withdrawals, and the loan had a history of delinquency. About October 26, 1978, plaintiff received his two notes, all of the documents pertaining to his loan transaction, and a withdrawal slip showing that $1,547 had been withdrawn from his savings account to pay off his delinquent debt. Plaintiff had not been advised that the bank intended to set-off the balance due on the note against his savings account. He testified that the notification from the bank that this had been done upset him to the extent that three days later he suffered a heart attack while visiting with relatives in another city.
The first question is whether a bank which holds collateral to secure a loan is required to seek satisfaction of its loan from the collateral before exercising its right to set-off a deposit of the debtor. We *893 do not find any Mississippi case dealing with the right of set-off when a bank's indebtedness is secured by collateral. However, in Moreland v. People's Bank, 114 Miss. 203, 74 So. 828 (1917) the Court held:
It is well settled that the bank itself has a right, if it so desires, to apply whatever amount the maker of the note has on deposit with it to a payment on the note. Or, in other words, the bank itself has the right to set off the amount it owes the depositor against the amount owed it by the depositor. The relation existing between a bank and a depositor is simply one of debtor and creditor. (114 Miss. at 211, 212, 74 So. at 829, 830)
The majority rule is that the right of set-off exists even if a bank's indebtedness is secured by collateral. The rationale of the majority rule is stated in Olsen v. Valley National Bank of Aurora, 91 Ill. App.2d 365, 234 N.E.2d 547 (Ill. App. 1968) as follows:
The plaintiffs argue that other jurisdictions make a distinction between indebtedness secured by collateral and indebtedness not secured by collateral, relative to the right of set-off; however, plaintiffs do concede that the distinction they urge is the minority rule. The ultimate test, of course, should not be numerical superiority, but the rationale supporting the rule. A bank should not be deprived of its right of set-off simply because it has the foresight to obtain collateral in exchange for obligations owed to it. The majority rule, including Illinois, is founded on the rationale that a creditor is able to pursue any one of a number of remedies against a debtor until the debt is satisfied. The minority rule is based upon the rule or statute that there is but one action for the recovery of a debt which is secured by collateral. (234 N.E.2d at 550)
See also, U.S. Ex rel. Crow Creek Sioux Tr. v. Tri-Cty. Bank, 415 F. Supp. 858 (D.C.S.D., 1976); Jensen v. State Bank of Allison, 518 F.2d 1 (C.A.8, 1975); Allied Sheet Metal Fab., Inc. v. Peoples Nat. Bank, 10 Wash. App. 530, 518 P.2d 734 (1974); Frank Briscoe Company, Inc. v. Suburban Trust Company, 100 N.J. Super. 431, 242 A.2d 54 (1968), Annot., 96 A.L.R. 1242 (1935).
Our Uniform Commercial Code gives a creditor the right to proceed with a number of remedies until a debt is satisfied. Section 75-9-501(1), (2) Mississippi Code Annotated (1972) provides the following:
(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents, the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 75-9-207. The rights and remedies referred to in this subsection are cumulative.
(2) After default, the debtor has the rights and remedies provided in this Part, those provided in the security agreement, and those provided in section 75-9-207.
In this case, the security agreement and note executed by the plaintiff gave the bank authority to set-off or charge the note against any deposit account or any other account maintained by the plaintiff with the bank without notice to the plaintiff. We are of the opinion that the rationale for the majority rule as stated by the Illinois Court is sound. We adopt the majority rule and hold that a bank is not deprived of its right of set-off when the indebtedness due it is secured by collateral under a security agreement and the debtor is in default because a creditor may proceed with a number of remedies against a debtor until the debt is satisfied. A bank is not deprived of its right of set-off simply because it had the foresight to require collateral to secure the debt due it.
Having determined the bank had the right to set-off the deposit of the plaintiff against the debt to it, the next question is whether the bank and its loan officer may *894 be required to respond in damages for the heart attack suffered by the plaintiff caused by mental stress to the plaintiff when the bank exercised its right to set-off without notice and without first seeking satisfaction of the debt from the collateral securing the loan.
Plaintiff's suit was a tort action against the bank charging the bank with the wrongful or tortious exercise of its contractual right to set-off.
This Court has defined a tort in the following cases: Capital Electric Power Assoc. v. Hinson, 230 Miss. 311, 92 So.2d 867 (Miss. 1957); Griffin & Sons v. Newton B.G. & O. Co., 210 Miss. 797, 50 So.2d 370 (1950) and Stokes v. Newell, 174 Miss. 629, 165 So. 542 (1936). A tort was defined in these cases as follows:
Capital Electric Power Assoc.
[I]t is clear from the foregoing statement of facts that this is an action in tort and not in contract. In 52 Am.Jur., Torts, Sec. 2, page 362, it is said:
"A tort is sometimes defined as a wrong independent of contract, or as a breach of duty which the law, as distinguished from a mere contract, has imposed. Generally speaking, a tort is a wrong, and a tortious act is a wrongful act. A tortious act has also been defined as the commission or omission of an act by one, without right, whereby another receives some injury, directly or indirectly, in person, property, or reputation. Although the same act may constitute both a crime and a tort, the crime is an offense against the public pursued by the sovereign, while the tort is a private injury which is pursued by the injured party." (230 Miss. at 322, 92 So.2d at 870, 871)
Griffin & Sons
[A] tort is an unlawful violation of a private legal right, ... (210 Miss. at 806, 50 So.2d at 373)
Stokes v. Newell
It is a general principle of law that the breach of a legal duty owed by one person to another when damages have resulted therefrom gives the right to a cause of action. This form of action is called in law a tort. (174 Miss. at 641, 165 So.2d at 545)
In this case the bank merely exercised its right of set-off in accord with its note and security agreement. This did not constitute a breach of duty owed by the bank to the plaintiff; therefore, neither the bank nor its loan officer are liable for any injuries resulting from the act of the bank in exercising its right of set-off. The trial judge properly sustained the motion for judgment notwithstanding the verdict.
We note that plaintiff only sought damages for his heart attack on the theory that it was caused by emotional stress which resulted from the bank's exercise of its right of set-off. He did not seek recovery for damages to his automobile while it was in the possession of the bank. The question of whether the bank used reasonable care to preserve the automobile while in its possession is therefore not before us. The rights and duties of a debtor and a secured party when collateral is in the secured party's possession are set forth in section 75-9-207 Mississippi Code Annotated (1972).
For the reasons stated, we affirm.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.