BREYER, Circuit Judge.
 

 This bankruptcy appeal requires us to determine the setoff rights of a secured creditor under Massachusetts law. The creditor-appellant, Saugus Bank and Trust Co. (“the Bank”), set off about $83,000 contained in a general account and a payroll account of the debtor, Saugus General Hospital (“the Hospital”), against a $134,000 Hospital debt that was secured by a mortgage on the Hospital facility itself. The Hospital’s receiver, Philip Sisk, contested the setoff and sued to recover the deposits. In our view, Massachusetts law allowed the Bank to set off funds from the Hospital’s
 
 general
 
 account, to the extent that the Bank reasonably believed that the security it held was inadequate to pay the outstanding Hospital debt. We remand this case to the bankruptcy court for application of this principle to the facts.
 

 I
 

 In early 1967, the Bank loaned the Hospital $200,000, to be repaid over fifteen years at 6 percent interest. The loan was secured by a first mortgage on real property, namely the 110-bed facility and adjacent land in Saugus. The Hospital, in and out of default over the years, stopped paying the Bank entirely after September 1977. On July 20,1978, the Bank informed the Hospital that it would foreclose on the mortgage. On August 19,1978, the Hospital’s directors voted to close the facility and dissolve the corporation. Nine days later, on August 28, the Bank took the steps at issue here.
 

 On August 28, the Hospital owed the bank $134,775.77 on its mortgage loan. On the same day, the Hospital had on deposit with the Bank the following amounts in three separate accounts: $63,261.40 in a general account; $20,006.68 in a payroll account; and $388.84 in a tax account. The Bank simply debited the three accounts for the amounts they contained and credited its own treasurer’s account with the total sum, namely $83,656.92. There is testimony it did this because it believed that the Hospital could not pay what it owed and that the foreclosure would not bring in enough money to cover the debt. Immediately after it learned what the Bank had done, the Hospital wrote a check for about $31,000 to transfer money out of its general account, but the Bank refused to honor the check.
 

 
 *44
 
 Three days later an involuntary bankruptcy petition was filed against the Hospital. The Hospital stopped operating altogether on September 6. The sale of its property was not completed, however, for another sixteen months. By that time, enough taxes (and possibly other priority expenses) had accrued so that the Bank received only $6,500 from its first mortgage foreclosure sale. In the meantime, the receiver had begun an action in the bankruptcy court to recover from the Bank the money that the Hospital had had on deposit.
 

 The bankruptcy court held for the receiver as to the funds in the payroll account. It concluded that the Bank could not set off such “special purpose” funds. It held against the receiver, however, as to the funds in the general account. It reasoned that, under Massachusetts law, a bank can set off funds only if it has good reason to believe that its security is inadequate, but that here the Bank had such reasons. The court did not ask the further question whether the Bank had set off more money than was necessary to make up for the security’s inadequacy. The court thought that Massachusetts law did not require this inquiry and that a bank whose security was inadequate in any amount could set off the full amount of a debtor’s deposits (up to the amount of the debt). Finally, because the receiver waived all claims to the $388 in the tax account, the court did not consider the propriety of that setoff.
 

 The receiver appealed to the district court, where he won a larger recovery. The district court held that the Bank, as a secured creditor, could set off nothing unless it had an objective basis for believing that the security was inadequate. The court stated that the Bank should have had the security, the Hospital’s property, appraised before setting off any Hospital funds. And, since the Bank had not conducted such an appraisal, the court found for the receiver and disallowed the entire setoff. The Bank appeals.
 

 II
 

 The threshold question is whether the Bank’s setoff rights are to be deter-mined by state or federal law. The parties and the courts below had proceeded on the assumption that Massachusetts law governs, but the Bank now raises the possibility that § 68 of the former Bankruptcy Act imposes a federal standard. Assuming that the question may be presented for the first time on appeal,
 
 compare Dobb v. Baker,
 
 505 F.2d 1041, 1044 (1st Cir.1974),
 
 with Johnston v. Holiday Inns, Inc.,
 
 595 F.2d 890, 894 (1st Cir.1979), we believe that the bankruptcy court and district court properly looked to the law of Massachusetts. We are aware of no case holding that federal rather than state law governs pre-petition setoffs.
 
 Cf. Studley v. Boylston Bank,
 
 229 U.S. 523, 528-29, 33 S.Ct. 806, 808-09, 57 L.Ed. 1313 (1913) (“[Tjhere is nothing in § 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted.”). Even those cases that have held that federal standards govern post-petition setoffs under § 68, moreover, have cast those standards “ ‘with an interested eye’ toward the [forum state’s] decisions.”
 
 In re Goodson Steel Corp.,
 
 488 F.2d 776, 779 (5th Cir.1974) (quoting
 
 In re A.M. Townson & Co.,
 
 283 F.2d 449, 452 (3d Cir.1960)). Moreover, to refer to forum law, at least where that law is not hostile to the interests of federal bankruptcy policy, cf.
 
 United States v. Little Lake Misere Land Co.,
 
 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973), is particularly appropriate where (as here) forum law restricts the setoff right, since § 68 was not intended to expand pre-existing setoff rights but merely to preserve them in bankruptcy.
 
 See Studley v. Boylston Bank,
 
 229 U.S. at 528, 33 S.Ct. at 808;
 
 Lehigh Valley Coal Sales Co. v. Maguire,
 
 251 F. 581 (7th Cir.1918). It would be ironic were we to construe § 68 to place the Bank in a better position by virtue of the Hospital’s bankruptcy than it would have occupied had the Hospital defaulted on its loan but been able to stay out of bankruptcy court.
 

 The Bank’s setoff rights are governed by Massachusetts’ basic common-law
 
 *45
 
 setoff doctrines. While the parties are free to modify these common-law setoff rules by contract, they have not done so here. Massachusetts occupies a minority position among American jurisdictions with regard to the setoff rights of secured creditors. In most jurisdictions, whether or not a creditor is secured, he can defend against a suit for money owed by asserting a setoff defense— that is, by showing that he set off a debt that he owed the plaintiff against a debt that the plaintiff owed him.
 
 See, e.g., Duncan v. Coahoma Bank,
 
 397 So.2d 891 (Miss.1981);
 
 Allied Sheet Fabricators, Inc. v. Peoples Nat’l Bank of Washington,
 
 10 Wash.App. 530, 518 P.2d 734,
 
 cert. denied,
 
 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). Thus, notwithstanding his status as a bankrupt, a depositor suing a bank for the return of his deposit ordinarily cannot recover if the bank has set off amounts due on any loan from the bank to the depositor, regardless of whether the bank has taken security for the loan.
 
 See Jensen v. State Bank of Allison,
 
 518 F.2d 1 (8th Cir.1975) (applying Iowa law). In Massachusetts, however, a creditor loses his right to a setoff if the debt owed him is fully secured.
 
 See Prudential Realty Co. v. Commissioner of Banks,
 
 241 Mass. 277, 135 N.E. 221 (1922);
 
 Furber v. Dane,
 
 203 Mass. 108, 89 N.E. 227 (1909). We are asked here to decide: (1) whether a Massachusetts bank creditor can exercise a setoff right if it fears but cannot be certain that its security is inadequate; and (2) if so, whether it can set off the full amount of the deposit or only the amount by which the security is inadequate.
 

 We believe that the answers to these questions flow readily from a consideration of the principles underlying Massachusetts setoff law. The right to set off debts owed to an insolvent party is derived not merely from principles of administrative convenience, but from principles of equity that would make it unfair for A to recover money from B when, because of A’s insolvency, B could not recover an offsetting debt from A. From the beginning, Massachusetts courts insisted that a creditor show not merely “[t]he existence of cross demands,” but “some peculiar equity which entitled him to be protected against his adversary s demand.”
 
 Spaulding v. Bachus,
 
 122 Mass. 553, 554 (1877). This insistence on confining setoffs to those cases in which equitable considerations support them plausibly accounts for Massachusetts’ refusal to allow a creditor to set off a debt when the creditor is otherwise adequately secured. The very act of asserting a setoff by a creditor institution like a bank may severely injure the debtor by destroying his liquidity and throwing him into bankruptcy, while the need for a
 
 fully secured
 
 creditor to assert a setoff is minimal. This potential “inequity” in allowing a fully secured creditor to assert such a setoff explains, in light of the origins of the setoff rule, why Massachusetts would deny such a creditor the rule’s benefits.
 

 Given this type of rationale for the basic Massachusetts rule (and we have found no other), we believe the Massachusetts courts would invoke a “rule of reason” in this case. That is to say, they would allow the potentially insecure creditor to assert a setoff if he has a
 
 reasonable
 
 belief that his security is inadequate. Such a “rule of reason” strikes a fair balance between the potentially insecure creditor and a financially imperiled debtor. Were a less restrictive standard imposed — for example, if a mere subjective fear of a shortfall were sufficient— banks might frequently resort to a setoff in circumstances where the setoff ultimately proved to be unnecessary, thus gratuitously burdening the depositor-debtor and defeating the very purpose of the Massachusetts secured-creditor exception. On the other hand, if a stricter standard were imposed— if, for example, the bank were required to
 
 prove
 
 that its security was inadequate before exercising a setoff, or if it uniformly had to conduct a pre-setoff appraisal— banks often would be unable to take advantage of the basic setoff rule even when they lacked full security. Special efforts to appraise property often would simply alert the depositor to the need to withdraw funds from the bank — as the hospital sought to do here, one day too late. On balance, a straightforward “rule of reason,” under which a secured creditor would be allowed
 
 *46
 
 to perform a setoff if it reasonably believed itself to be insecure, is the rule most in keeping with the apparent rationale of the setoff rule and the Massachusetts secured-creditor exception.
 

 The answer to the first question also answers the second. And here we find ourselves with more definite authority. Given the rationale of the Massachusetts secured-creditor exception, a potentially insecure creditor ought to be entitled to set off no more than the amount by which his security is inadequate. After all, if he can set off more, a reasonable belief that security is worth but a few dollars less than the outstanding debt would warrant the bank in seizing the debtor’s entire deposit. There is no reason why so major a consequence should flow from so small a difference in value. To allow it to do so might significantly erode the strength of the secured-creditor rule, insofar as it shows concern for the financial stability of the debtor.
 

 More importantly, to allow a complete setoff would run counter to the express statement of the Massachusetts Supreme Judicial Court in
 
 Forastiere v. Springfield Institution for Savings,
 
 303 Mass. 101, 104, 20 N.E.2d 950, 952 (1939):
 

 It has been held that where the debt from the depositor to the bank is a secured one, a contract is implied that the bank may resort to a set-off only for the balance of the debt beyond the value of the security. That is the settled law of this Commonwealth ....
 

 The bankruptcy court denied the authority of
 
 Forastiere
 
 for two reasons. First, it believed that
 
 Forastiere,
 
 which expressly relied on prior Massachusetts authority for the “settled law of this Commonwealth,” overstated the previous holdings. Whether or not that is so, we do not believe that fact is sufficient reason for departing from a Massachusetts case that enunciates a principle in harmony with the basic thrust of Massachusetts law on the subject. Second, the court feared that a rule that confined a bank to setting off only the amount of the deficiency would be too difficult for either the bank or the courts to administer. While we understand the nature of the difficulty, we are not requiring that the Bank or the bankruptcy court be omniscient as to the setoff decisions—only reasonable. As long as the Bank has a reasonable basis for believing that the amount it is setting off does not exceed the shortfall in the value of its security, it is entitled to the amount of the deficiency (although
 
 Forastiere
 
 obviously also requires it to return any amount that proves to exceed the amount of the actual deficiency).
 

 We therefore conclude that while the district court imposed too severe a standard on the Bank, the bankruptcy court too quickly allowed the Bank to set off the entire general account fund. It ought to have determined whether the Bank reasonably believed at the time of the setoff that the security, when eventually reduced to cash, would fall short of the Hospital’s debt by at least the amount of the setoff. To the extent that the security was not so deficient, the setoff should not have been allowed.
 

 Despite the fact that the Bank obtained only $6,500 from the eventual sale of Hospital property—making the setoff far less than the ultimate deficiency—the record does not make clear whether the Bank pursued its foreclosure option as quickly as possible and whether the Bank reasonably believed that this or a similar result was likely when it made the setoff. We shall therefore remand this case to the bankruptcy court to allow it to make these determinations.
 

 Ill
 

 The bankruptcy court held, and the district court stated in dicta, that the Bank had no right to set off funds in the Hospital’s payroll account. We agree. Judge Friendly has written that “[i]t is ... settled law that a bank cannot exercise a setoff against a deposit which is known by it to be dedicated to a special use.”
 
 In re Applied Logic Corp.,
 
 576 F.2d 952, 958 (2d Cir.1978);
 
 see
 
 4
 
 Collier on Bankruptcy
 
 ¶ 68.16, at 912-13 (14th ed. 1978). The Second Circuit stat
 
 *47
 
 ed in
 
 Applied Logie,
 
 and this Circuit stated in
 
 Constructadora Maza, Inc. v. Banco de Ponce,
 
 616 F.2d 573 (1st Cir.1980), that a payroll account whose funds are known by a bank to be dedicated solely to the satisfaction-of employee paychecks qualifies as a deposit dedicated to a special use and may not be set off by the bank.
 
 Constructadora Maza,
 
 616 F.2d at 579 (dictum);
 
 Applied Logic,
 
 576 F.2d at 958 (dictum).
 
 But see Ribaudo
 
 v.
 
 Citizens’ Nat'l Bank,
 
 261 F.2d 929, 933 (5th Cir.1958) (contra);
 
 In re Paverite, Inc.,
 
 5 Bankr.Ct.Dec. (CRR) 576 (Bankr.E.D.Tenn. Jan. 19, 1979) (same).
 

 The Bank argues that the exemption for special deposits should be confined to cases in which the deposit is expressly or implicitly held in trust by the bank. Whatever the merits of a “trust fund” theory in the abstract, we think they must yield to the underlying Massachusetts policy of preventing unduly burdensome effects on depositor liquidity. After all, a payroll account plays a critical role in the short-term stability of the debtor. It also affects the welfare of a firm’s employees, who are completely innocent parties in any debtor default.
 
 Cf.
 
 Mass.Gen.Laws ch. 246, § 20 (forbidding use of trustee process to attach funds in payroll accounts). We therefore see no reason to depart from the authority just cited.
 

 The record here supports the findings of the courts below that the Bank was aware that the Hospital’s payroll account was intended to be used solely for payroll purposes. The account was separately administered by both the Hospital and the Bank itself. Its balance was kept at or near the level needed to cover payroll checks alone. We accordingly affirm the judgment of the district court insofar as it requires the return of the funds set off from the Hospital’s payroll account.
 

 IV
 

 Because the Bank is not entitled to set off the funds in the payroll account but may be entitled to set off part of the funds in the general account, it is necessary to determine the effective date of the setoff. This is so because on August 28, 1978, the same date that the bank seized the funds in both accounts, the bank received a check from the Hospital purporting to transfer $31,458.31 from the general account to the payroll account. The Bank conditionally posted the check on August 28, but dishonored it the following day. Neither party disputes that while the Bank debited the Hospital’s accounts before the check was received, it did not credit the Hospital’s mortgage loan account with the amount of the funds until November 22, 1978. The Hospital urged below, without success, that the effective date of the setoff was November 22 rather than August 28; that the transfer check was therefore wrongfully dishonored; and that the money at issue should have been shielded from setoff by the immunity given the payroll account itself. We agree with the bankruptcy court that the setoff was effective on August 28, and that the check was therefore rightfully dishonored.
 

 While Massachusetts precedents do not address the precise question before us, the issue is explored in
 
 Baker v. National City Bank,
 
 511 F.2d 1016 (6th Cir.1975) (applying Pennsylvania law).
 
 Baker
 
 held that three steps are necessary to exercise the setoff right:
 

 1) The decision to exercise the right;
 

 2) some action that accomplishes the set-off; and
 

 3) some record which evidences that the right of set-off has been exercised.
 

 Id.
 
 at 1018. In this case, the Bank’s actions in debiting the Hospital’s accounts and crediting its treasurer’s account were sufficient to satisfy
 
 Baker’s
 
 three requirements. They demonstrated an obvious decision to exercise the setoff right. By ending the Hospital’s ability to draw on the funds, they accomplished the setoff in a practical sense. Finally, the debit-and-credit record constitutes a sufficient record that the Bank had exercised its right — certainly sufficient to give notice to the Hospital, which immediately made alternate arrangements with the Bank to pay its payroll.
 

 
 *48
 
 The Hospital argues at length that the Bank should be required to take the final step of crediting the mortgage loan in order to perfect its rights, but as long as the Bank’s intention to effect a setoff is clear, as it was here, there is no obvious reason to require another bookkeeping entry.
 
 See
 
 B. Clark,
 
 The Law of Bank Deposits, Collections and Credit Cards
 
 ¶ 11.9, at 11-28 (rev.ed.1981) (“formal bookkeeping, entries are-not required to perfect a set-off”). We-are not persuaded that the Massachusetts courts would require any actions other than those taken on August 28 to effect a setoff and make the Bank’s dishonoring of the check rightful.
 

 The judgment of the district court is affirmed in part and vacated in part. The cause is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings in accordance with this opinion.