575 So.2d 993 (1990)
PURINA MILLS, INC.
v.
E.R. MOAK and Faye M. Moak d/b/a Moak's Dairy Farm.
No. 07-CA-59304.
Supreme Court of Mississippi.
December 19, 1990.
Rehearing Denied March 6, 1991.
*994 Kenneth R. Dreher, Jerry L. Mills, Pyle Dreher Mills & Woods, Jackson, for appellant.
Daniel H. Fairly, Wells Wells Marble & Hurst, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This cause comes on appeal from the Circuit Court of Lincoln County, Mississippi, Joe N. Pigott presiding. At the conclusion of the trial the jury found that Purina Mills, Inc. (Purina) sold defective cow feed to the Moaks and awarded Moak's Dairy $110,000 in damages. Purina presents four assignments of error on appeal to this Court:
1) Whether the circuit court judge erred by denying Purina a continuance to remove this action to federal court when the judge determined that Farmers Milling Company was improperly joined as a defendant;
2) Whether the trial court erred in granting Jury Instruction P-9;
3) Whether the circuit court judge erred by allowing evidence of loss of cows which were not properly disclosed in Moak's Dairy's responses to Purina's interrogatories; and
4) Whether the verdict was against the overwhelming weight of the evidence due to inadequate proof of damages or improper application of the law of comparative negligence by the jury.
The Moaks had been using Purina feed for their dairy cattle since early 1985, purchasing approximately six tons per week from their supplier, Farmers Milling Company. On June 30, 1986, the Moaks received a load of Purina feed. A few days later Mr. Moak found magnets, which had been installed in five feed bins, covered with pellets.[1] This indicated that there was metal in the feed. Purina and Farmers Milling Company picked up the feed, cleaned the magnets and delivered a new load. The Moaks again found the magnets covered with pellets from the new load of feed.
Though the Moaks were aware continued use of the contaminated feed was dangerous to their herd, they kept using Purina feed because Purina representatives assured *995 them that the problem would be solved. During July, 1986, the Moaks checked the magnets daily and continued finding the magnets covered with Purina feed pellets. From June 30, 1986, to July 28, 1986, the Moaks received five loads of contaminated Purina feed from their supplier, Farmers Milling Company.
After July 28, 1986, the Moaks purchased Purina feed from a different dealer. The same problem occurred, only not as severe. In February, 1987, the Moaks terminated all use of Purina feed and purchased Nutrina feed from Farmers Milling Company. Since February the Moaks have had no further problems with metal in their feed pellets.

I.

WAS PURINA ENTITLED TO A CONTINUANCE TO REMOVE THIS ACTION TO FEDERAL COURT WHEN THE TRIAL COURT GRANTED A DIRECTED VERDICT TO FARMERS MILLING COMPANY?
At the conclusion of the Moaks' case-in-chief, the trial court granted Farmers Milling Company's motion for a directed verdict on grounds that the Moaks failed to put on any evidence showing that Farmers Milling "caused or contributed to the contamination of the feed or failed to use due care to prevent the contamination of the feed." Purina Mills then alleged fraudulent joinder because the Moaks had no intention of seeking recovery from Farmers Milling Company and moved for a continuance to remove the action to federal court. The trial court, finding that there was no abuse of discretion by the Moaks in joining Farmers Milling as a defendant, denied the motion.
Purina, being the party seeking removal, had the burden of proving fraudulent joinder to the trial judge. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir.1990). We will not reverse the lower court's determination unless the trial judge abused his discretion in denying a continuance. Red Enterprises, Inc. v. Peashooter, Inc., 455 So.2d 793, 796 (Miss. 1984); Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 692 (Miss. 1983). Under our law if the Moaks had any possibility of recovery against Farmers Milling Company, then the trial court properly concluded that joinder was not fraudulent. Carriere, 893 F.2d at 100; Laughlin v. Prudential Ins. Co., 882 F.2d 187, 190 (5th Cir.1989) (applying Mississippi law); Moore v. Interstate Fire Ins. Co., 717 F. Supp. 1193, 1196 (S.D.Miss. 1989).
While Purina correctly notes that our courts should not sanction devices intended to defeat removal, the court is not mandatorily required to decline from proceeding with the action. Sears, Roebuck & Co. v. Van Dolah, 188 Miss. 59, 194 So. 475, 478 (1940). We do encourage courts to refuse to proceed further when the plaintiff makes no attempt to prove the cause of action at trial and when the pleadings filed did not intend to attempt to prove, and could not have proved, the alleged cause of action. Sears, Roebuck, 194 So. at 478.
In this case the Moaks failed to put on any evidence to prove that Farmers Milling Company was responsible for the contamination of the feed. Purina, however, produced no evidence indicating that at the time the Moaks filed suit that they had no intention of proceeding against Farmers Milling Company, that the Moaks joined Farmers Milling Company in bad faith, or that the Moaks lacked a bona fide belief that it had a valid cause of action against Farmers Milling Company.
At the time the complaint was filed, the Moaks could have believed they had a cause of action for strict liability in tort against Farmers Milling Company, the retailer. See Hall v. Miss. Chemical Exp., Inc., 528 So.2d 796, 799 (Miss. 1988) (citing Restatement (2d) Torts, § 402A); Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 379 (Miss. 1986). Moreover, Dr. Herman testified that he investigated Farmers Milling's system and facilities on their premises to determine whether Farmers Milling had the capabilities of manufacturing metal fragments inside the feed pellets. This suggests that at one time action against Farmers Milling Company was contemplated *996 by the Moaks. Based on this evidence we find that the trial court did not abuse its discretion in denying the continuance and that this assignment of error has no merit.

II.

DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTION P-9?
Purina objected to instruction P-9 alleging that the jury was provided no evidence from which it could determine damages. Instruction P-9 reads in pertinent part:
Should your verdict be for plaintiffs, E.R. Moak and Faye M. Moak, you may consider such of the following factor in determining the amount of damages to be awarded as may be shown by a preponderance of the evidence:
(1) The actual purchase price or cost of the feed purchased from Purina Mills, Inc.;
(2) Loss of milk production;
(3) Increased cull rate of the cows;
(4) Increased veterinary and herd health costs;
(5) The value of cows which died as a proximate result of the acts of Purina Mills, Inc., if any;
(6) The actual value of calves which died as a proximate result of the acts of Purina Mills, Inc., if any;
(7) The actual value of calves which had to be sold as a result of illness, disease or other ill effects proximately caused by the acts of Purina Mills, Inc. if any;
(8) Any future expenses related to loss of milk production, lost cows, lost calves or loss of future profits, if any, as a proximate result of acts of Purina Mills, Inc.
The trial court denied the objection finding that the testimony of Mr. Moak, Dr. Smith, and Dr. Herman provided a sufficient basis for the jury to determine the damages requested in the instruction.
Purina correctly notes that before the jury is instructed regarding a disputed fact, there must be some credible evidence in the record which would support the instruction. Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 37 (Miss. 1989); Graves v. Graves, 531 So.2d 817, 821 (Miss. 1988). However, this Court also recognizes the rule that where jury instructions read as a whole fairly  though not perfectly  instruct the jury on the applicable law, this Court will not reverse. Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss. 1989); Middleton v. Evers, 515 So.2d 940, 942 (Miss. 1987).
In this case we note that instruction P-9 furnishes a guide to the jury to be used by it in awarding damages. See Gerodetti v. Broadacres, Inc., 363 So.2d 265, 267 (Miss. 1978). Though we would agree that there was no evidence by which the jury could determine an award of damages for some of the factors listed in instruction P-9, we find this defect to be harmless because instruction P-8 instructed the jury that damages, to be recoverable, must be shown with reasonable certainty both as to their nature and as to their cause.
Instruction P-8 states in pertinent part:
If the cause of the injury is reasonably certain, you may reasonably estimate the damages. Although the lack of a perfect measure does not preclude recovery, you must not guess or speculate. The plaintiffs must give you a reasonable basis on which to base your estimate of damages.
This instruction when read in conjunction with instruction P-9 instructs the jury not to determine any of the damages requested in instruction P-9 without proof of a reasonable basis upon which to base an estimate.
Reading the instructions as a whole, we find that the jury was adequately instructed. See Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987). This assignment of error is without merit.

III.

DID THE TRIAL COURT ERR BY ALLOWING EVIDENCE OF LOSS OF COWS WHICH WERE NOT PROPERLY DISCLOSED IN MOAK'S DAIRY'S *997 RESPONSES TO PURINA MILLS, INC.'S INTERROGATORIES?
Purina contends that the trial court erred in allowing testimony which related to cows that had not been identified in the discovery responses because Moaks' responses allegedly led them to believe that only those cows which were identified in discovery had left the herd in August, had died, or been sold.
We question why Purina has raised this error. The trial court sustained Purina's objection and did not allow Mr. Moak to testify about any loss of calves which occurred after August 19, 1987. Purina later objected to Dr. Herman testifying to damages involving seventeen cows, some of which were culled after August 19, 1987. The judge permitted the expert to testify to any damages or injuries to the cows occurring between June 30, 1986, and August 19, 1987, but only allowed testimony of damages or injuries occurring after August 19, 1987, if the cows had eaten the feed and their condition was such that they should have been culled on or before August 19, 1987.
Based on our review of the evidence, we find the trial court was not in error in sustaining Purina's objections and limiting the testimony. This assignment of error has no merit.

IV.

WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE DUE TO INADEQUATE PROOF OF DAMAGES OR DUE TO IMPROPER APPLICATION OF THE LAW OF COMPARATIVE NEGLIGENCE BY THE JURY?
In reviewing the jury's award of damages our review is limited. If there is substantial evidence in support of the verdict or if the verdict is not so large or inadequate as to shock our conscience or is not the result of bias, passion or prejudice on the part of the jury, we will not reverse. Pham v. Welter, 542 So.2d 884, 889 (Miss. 1989); Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 420 (Miss. 1989), (Lee, J., dissenting) [quoting Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324, 326 (Miss. 1988)]; Bradley v. Findley, 502 So.2d 1181, 1183 (Miss. 1986).

1. Comparative Negligence
Purina contends that the damage award evinces prejudice and bias because the jury failed to mitigate damages when Purina proved that the Moaks were contributorily negligent in continuing to feed the defective pellets to the cattle despite advice from the Moaks' veterinarian and animal nutritionist that they should cease using the product. See generally Miss. Code Ann. § 11-7-15 (1972). The Moaks deny being contributorily negligent due to their good faith reliance on continued assurances from Purina.
The issue before the jury was whether the Moaks should have heeded the advice of their veterinarian and animal nutritionist over the repeated assurances from Purina that the feed problem would be solved. See J.M. Griffin & Sons v. Newton Butane Gas & Oil Co., 210 Miss. 797, 804, 50 So.2d 370, 372 (1951). We find that there was sufficient evidence for the jury to have found that the Moaks were contributorily negligent or to have found that the Moaks reasonably relied on Purina's assurances. Under the law in this state the jury is not required to accept either theory. Pham v. Welter, 542 So.2d 884, 890 (Miss. 1989). Since the determination of whether their reliance, if any, was unreasonable was a question of fact and since the jury was properly instructed on the law of contributory negligence, we find the jury properly considered the issue. We will not impose our opinion for the jury's.
The verdict in this case does not shock our conscience nor do we find it to be the result of passion, bias or prejudice. This assignment of error has no merit.

2. Proof of Damages
Purina does not deny that the feed purchased by the Moaks contained metal, but it does dispute that the Moaks proved any resulting damages. Purina alleges that because the Moaks failed to prove damages, the jury's verdict was based on *998 mere speculation. Specifically disputed by Purina is the Moaks' proof of lost milk production, value of lost cows, and value of lost calves.
The Moaks were required to provide proof of damages with as much certainty and accuracy as was reasonably possible. Stephens v. Brock, 568 So.2d 702 (Miss. 1990); Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990); Eastland v. Gregory, 530 So.2d 172, 174 (Miss. 1988); Mutual Life Ins. Co. of New York v. Estate of Wesson, 517 So.2d 521, 536 (Miss. 1987). Though the exact loss might be uncertain, as long as the damage is certain and the proof is sufficient to afford a reasonable basis to estimate the Moaks' loss, the jury properly could determine an award. Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 421 (Miss. 1989) (Lee, J., dissenting); Mutual Life Ins. Co. of New York v. Estate of Wesson, 517 So.2d 521, 537 (Miss. 1987); Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050-51 (Miss. 1984).
In closing argument the Moaks utilized an exhibit showing their damages as follows:

LOSS OF MILK PRODUCTION $ 73,433.10
ACTUAL VALUE OF LOST COWS $ 23,800.00
 ($20,400.00 to $23,800.00)
ACTUAL VALUE OF LOST CALVES $ 8,000.00
 ___________
TOTAL $105,233.10

As noted previously, the jury also was provided an instruction requesting damages in several areas: the actual purchase price or cost of the feed purchased from Purina; loss of milk production; increased cull rate of the cows; increased veterinary and herd health costs; the value of cows which died as a proximate result of the acts of Purina, if any; the actual value of calves which died as a proximate result of the acts of Purina, if any; the actual value of calves which had to be sold as a result of illness, disease or other ill effects proximately caused by the acts of Purina, if any; and any future expenses related to loss of milk production, lost cows, lost calves or loss of future profits, if any, as a proximate result of acts of Purina. The jury awarded $110,000 to the Moaks.
We find that the Moaks should have put on proof of their net milk profits, not gross, and that they should have introduced the price received for cows sold. The proof of lost calves was sufficient because Purina cross-examined Dr. Herman on the value of the calves, and the jury was free to believe or disbelieve the witness' testimony. Stubblefield v. Walker, 566 So.2d 709, 712 (Miss. 1990).
However, this in itself is not sufficient for us to require a new trial on the issue of damages. There was indisputably a substantial loss sustained by the Moaks. While the exhibit used by the Moaks showed their opinion as to their losses, the Moaks further put on evidence showing that they sustained injury by having to provide medicine and veterinary services for their cattle; having to use more labor than usual to check the herd, especially during the calving season; and having increased days open on their reproductive program. We find that these damages could not all be shown by exact proof and under the circumstances of this case some of these damages could only be a "fair and reasonable" estimate. Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 416 (Miss. 1989); Nichols v. Stacks, 485 So.2d 1034, 1039 (Miss. 1986); Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984). But see Stephens v. Brock, 568 So.2d 702 (Miss. 1990). As noted previously, speculation and uncertainty of amount of damages is no bar to recovery of damages. Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 416 (Miss. 1989); Mutual Life Ins. Co. of New York v. Estate of Wesson, 517 So.2d 521, 536 (Miss. 1987); Nichols v. Stacks, 485 So.2d 1034, 1038 (Miss. 1986); Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984); Merritt v. Dueitt, 455 So.2d 792, 793 (Miss. 1984).
Due to the substantial losses actually proved and the significant losses incapable of exact proof we find that under the circumstances of this case the jury reasonably could have found damages in the amount of $110,000. There is sufficient evidence to support the verdict and we find the damage award to be fair and reasonable. The jury *999 verdict as to liability and damages is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and BLASS, JJ., concur.
ANDERSON and PITTMAN, JJ., not participating.
NOTES
[1] The magnets had been installed in spring 1985 because a valuable cow ate a piece of metal which killed it. This problem is known in the cattle industry as hardware. The magnets are placed in the feed bins to attract any metal in the bins.