**Paul D. FAIRLEY, Plaintiff-Appellee,**

v.

**AMERICAN HOIST & DERRICK COMPANY, etc., Defendant-Appellant.**

No. 79–4083.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 25, 1981.

Rehearing Denied April 30, 1981.

Butler, Snow, O'Mara, Stevens & Canna-da, Walter G. Watkins, Jr., Roger C. Land-rum, Jackson, Miss., for defendant-appellant.

Cumbest & Cumbest, John L. Hunter and Arvis V. Cumbest, Pascagoula, Miss., for plaintiff-appellee.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

PER CURIAM:

This is a nettlesome case. It turns on the validity of a jury verdict, now challenged on the ground that it lacks evidentiary support.

The American Hoist & Derrick Company manufactured an American 999–C crawler crane in 1971. It sold the crane to May Machinery that same year. On the same day that May bought the crane it sold it to Gulf Cities Construction Company. Gulf Cities used the crane for several years and then leased it to Baggett Construction on March 3, 1976.

On August 12, 1976, Paul Fairley, an employee of Baggett Construction Company, was working is one of a crew building a gantry at the Ingalls Shipyard in Pascagoula, Mississippi. By means of a bucket (hereafter called the "cage") attached to the 999–C crane Fairley had been hoisted to a height of 100 feet in the air, where he was performing the work assigned to him.

Reciting what thereafter happened, in the light most favorable to the verdict, Fairley and three others climbed into the cage and the crane operator, J. D. De-Laughter, began lowering them to the ground, ostensibly for the purpose of eating lunch or taking a noon-day break. The cage did not descend as slowly as had previously been its wont. Instead, it began a dangerously fast descent. It fell approximately 50 feet and then stopped abruptly, before reaching the ground. This precipitate stop of the abnormally rapid descent threw Fairley to the bottom of the cage, from which he sustained severe injuries.

Fairley, of course, was covered by workmen's compensation benefits as an employ-

ee of Baggett. Prior to trial, he made a compromise agreement with Gulf Cities Construction and its agents, eliminating all defendants from the suit except American Hoist & Derrick Company, the appellant here.

The indispensable gravamen of Fairley's surviving products liability suit against American Hoist & Derrick, which had manufactured the crane more than five years previously, was that the 999–C crane had been manufactured and sold with a defect which caused the cage to abruptly fall free of restraint and then abruptly stop when the crane brakes caught. Fairley referred to this as "free fall and grab".

The trial jury found for Fairley on strict liability in tort and awarded him $50,000 in damages.

This being a diversity case, liability is governed by the substantive law of the State of Mississippi.

■ On the other hand, the sufficiency or the insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard. The standard in this Circuit applied without challenge for more than ten years was announced in *Boeing Company v. Shipman*, 411 F.2d 365 (5 Cir., 1969) (en banc). A court may not substitute its findings for those of the jury unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at a verdict to the contrary. If there is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the jury function may not be invaded.

■ Under Mississippi law, the lapse of time between manufacture and sale is not within itself, and of itself, a bar to products liability. However, the plaintiff must carry the burden of establishing by a preponderance of the evidence that the product when sold was in a defective condition, unreasonably dangerous to the user or the consumer; the product must reach the user or consumer without substantial change in the condi-

tion existing at the time of sale; and the defective condition must be a substantial element in the cause of the injury, *Ford Motor Company v. Matthews*, 291 So.2d 169 (Miss., 1974). A showing that a product had a mechanical defect is not enough if it did not cause or contribute to the cause of the injury, *Walton v. Chrysler Motor Corporation*, 229 So.2d 568, 572 (Miss., 1969).

■ We now review the evidence in the light of this substantive law and in keeping with the *Boeing* standard.

The undisputed evidence established that when the cage attached to this crane is raised to the level at which it is to be retained until released it is held there by a foot brake operated by the crane operator. When the operator wishes to lower the cage he releases some of the foot pressure which is being exerted on the brake and the speed of the descent is governed by the amount of the pressure released. The only method for determining the speed of descent is to watch the cage carefully as it is brought down. The accident report prepared by Baggett Construction Company stated only that the operator of the crane felt the basket being lowered too fast, applied the brake, and Fairley's right knee buckled and hit a mid-angle brace, injuring his right knee.

Two crane operators, a construction superintendent, and a crane expert concluded that the most likely cause of the accident was operator error.

In two depositions, Operator DeLaughter testified that although he had released only a reasonable amount of foot pressure the cage descended at an unreasonable rate of speed. As to the sudden stop, he claimed that he eased back on the brake but the cage nevertheless came to a sudden, abrupt stop.

The only defect in the crane asserted by any witness was that the brakes were rough and tended to "grab". This is what DeLaughter testified to and two other crane operators agreed that the brakes were rough. Their testimony was that when the cage was being lowered at a reasonable rate

of speed the brakes would sometimes hold smoothly and at other times would "grab", causing the cage to sway from side to side. This, of course, shed no light on what caused the cage to descend halfway to the ground at a dangerous rate of speed before the operator stopped it. It pointed to no defect or dangerous condition in the crane as it came from the manufacture-seller which could have, or did, cause the dangerous rate of speed. With a cage descending at such a rate of speed and already within fifty feet of the ground the operator would naturally try to stop it—and stop it he did, so abruptly that the resulting impact injured Fairley, as any sudden stop in an automobile or other occupied moving object is likely to do. Operators and supervisors who had seen the 999–C cage rise and descend thousands of times testified that they had never seen such a free fall on the 999–C either before or after Fairley's injury.

We are forced to the conclusion that while a *Boeing* jury could have found that the 999–C had brakes which on occasion were rough or grabbed, the record is simply devoid of evidence that when American Hoist & Derrick sold this crane, or at any subsequent time for that matter, it had a defect which caused the cage to take the free fall which directly precipitated this regrettable accident. We are unable to see how, on this record, a reasonably minded jury could negate the fact that if the operator had released only the proper amount of brake pressure the rapid descent would not have occurred. Roughness of the brakes, or a tendency to grab when applied, could not have caused the dangerously speedy pay out of the cable to which the cage was suspended.

The judgment of the District Court is reversed and the cause is remanded with directions to enter judgment for the appellant.

REVERSED and REMANDED.