485 So.2d 1034 (1986)
Frank A. NICHOLS and Caren E. Nichols
v.
Raymond C. STACKS, d/b/a Raymond C. Stacks Construction Co.
No. 55309.
Supreme Court of Mississippi.
February 26, 1986.
Rehearing Denied April 23, 1986.
William F. Randle, Tupelo, for appellants.
Thomas M. McElroy, Mounce, McElroy & Cork, Tupelo, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
HAWKINS, Justice, for the Court:
Frank A. and Caren E. Nichols have appealed a final decree of the chancery court of Lee County dismissing that portion of their complaint for statutory damages against Raymond C. Stacks for wrongful destruction of trees. Stacks has cross-appealed, contending the court erred in awarding the Nicholses any damages.
We find the court erred in ruling there was insufficient evidence upon which to base a claim for statutory damages, and reverse and remand on the direct appeal. As to the cross-appeal, we find no merit and affirm.

FACTS
Dr. and Mrs. Frank A. Nichols owned 160 acres of undeveloped property in Lee County. The Mooreville-Richmond Water Association (Association), a Farmers Home Administration rural water distribution center, desired to expand their water distribution system, and employed the services of Cook-Coggin Engineers, Inc. (Cook-Coggin), to engineer and supervise the expansion. The Association contracted with Raymond C. Stacks to do the actual construction digging and laying the water lines on the expansion. Troy Short, an officer of the Association, on three occasions contacted Dr. Nichols in an attempt to obtain an easement across the Nichols property. Dr. Nichols was unwilling to grant any easement. Unable to obtain an easement from Dr. Nichols, Short contacted the supervisors and obtained permission to use the county right-of-way along the Mooreville-State Park Road and to lay the water line in the ditch adjacent to the road. This road traversed the Nichols land.
Stacks's employee David Baker was the superintendent on the job and Robert Whaley was the foreman. Baker attended the pre-construction conference as Stacks's representative and was informed that the Association had been unable to obtain an easement across the Nichols property.
*1036 Immediately following the conference, James Williams, an employee of Cook-Coggin, Troy Short and Baker drove out to the Nichols property and Short pointed out to Baker the Nichols property line and explained where the water line was to be laid to avoid the Nichols property. There was also testimony (denied by Stacks but apparently accepted by the chancellor) that Stacks himself was actually informed.
Despite being given explicit instructions that no water line was to be laid on the Nichols property, and that the Association had no easement across it, Stacks's employees did in fact construct the water line across Nichols property, destroying many trees in the process. Not only were the trees destroyed by Stacks's bulldozer and ditch digging machine, virtually all signs thereof were obliterated and covered with dirt.
The Nicholses filed suit against the Association and Stacks alleging a trespass upon their property and seeking actual damages in the amount of $100.00, the statutory penalty for the destruction of 1,984 trees, and a mandatory injunction.
The Association and Stacks filed a thirdparty action against Cook-Coggin seeking indemnity. The Association and Stacks also maintained cross-claims against each other, and Cook-Coggin filed a cross-claim against Stacks.
Dr. Nichols testified that it was impossible to obtain an actual count of the trees destroyed and, therefore, he estimated the number of trees destroyed by dividing the destroyed area into four sections and labeling them A, B, C and D. He arrived at the number of trees in sections A, B and C by counting the trees in an adjacent area and then multiplying that number by the total area destroyed. The conversion factor used to multiply the square footage of the area counted to the square footage of the area destroyed was then multiplied by the number of trees of each type to reach an estimate of how many trees had been present in these areas.[1]
The trees in area D had been set out by the Nichols on eight foot centers, so to obtain the number of trees in this area, Nichols measured an area 14 feet wide and 180 feet long, which was bulldozed by Stacks and then divided the square feet in the bulldozed path by 64 square feet (1 pine tree for each 64 square feet) and determined that 55 pine trees were destroyed in section D.
At the conclusion of the trial, the chancellor held that the conduct of Stacks violated Miss. Code Ann. § 95-5-3 and subjected him to the statutory penalty. He found that in area D the plaintiffs had proved the destruction of 55 pine trees for which they were entitled to $55.00 per tree, plus $100.00 actual damages, or $3,125.00. He also ruled that since Miss. Code Ann. § 95-5-3 was a penal statute, the plaintiffs had failed to meet the burden of proof to sustain any statutory damages for destruction of the remaining trees in the other areas.
A decree was entered in accord with this opinion.
The Nicholses have appealed the chancellor's rejection of their statutory claim for any damages beyond the loss of the 55 pines. No appeal has been made by either party as to the dismissal of the action against the Water Association and Cook-Coggin.
Stacks has cross-appealed, assigning several errors, and claiming no monetary award of any kind was justified in favor of the Nicholses against him. The chancellor dismissed the complaint against the Association and Cook-Coggin.

LAW

SUFFICIENCY OF EVIDENCE TO PROVE STATUTORY DAMAGES FOR TREES DESTROYED OTHER THAN 55 PINES
Miss. Code Ann. § 95-5-3 (1972) states:

*1037 If any person shall cut down, deaden, destroy or take away, if already cut or fallen, any cypress, white oak, black oak, or other oak, pine, poplar, black walnut, cherry, pecan, hickory, chestnut, birch, ash, holly, gum, persimmon, cedar, sassafras or beech tree, not his own, without the consent of the owner, he shall pay to the owner of the tree or trees, as a penalty, fifty-five dollars ($55.00) for every such tree so cut down, deadened, destroyed or taken away; and for every other tree not herein described so cut down, deadened, destroyed, or taken away, the sum of thirty-five dollars ($35.00) shall be paid as a penalty. And in addition to the penalty to be paid as herein provided, he shall pay to the owner of such tree or trees the actual value of such tree or trees so cut down, deadened, destroyed or taken away; and for such actual damages and for such penalty the owner may recover in the same suit. To establish the right of the owner prima facie, to recover under the provisions of this section, it shall not be required of the owner to show, by a preponderance of the proof, that the defendant or his agents or employees, acting under the command or consent of their principal, wilfully, recklessly, and knowingly cut such trees, but it shall only be required of the owner to show that such timber belonged to such owner, and that such timber was cut by the defendant, his agents or employees, without the consent of the owner, provided, the defendant may establish good faith as an affirmative defense as to the statutory penalty.
In applying this statute, the chancellor had a two-tiered inquiry: (1) whether the conduct of Stacks's employees justified the infliction of any statutory penalty against him, and if so, (2) the amount of such damages.
The chancellor correctly ruled that under this Court's decisions, simple negligence on the part of a defendant will not justify an award of any statutory penalty. As we stated in Rutland v. Corley, 287 So.2d 433, 434 (Miss. 1973):
This Court has always been cautious in the infliction of the statutory penalty and will allow it only where the facts are well-proved and where the testimony shows the trespass to have been wilful, or the negligence so gross, or the indifference so real, or the lack of good faith so evident, as to be tantamount to wilfulness.
He also had sufficient evidence to support his decision that the conduct of Stacks's employees warranted application of the statutory penalty. We certainly could not hold the chancellor was manifestly wrong when he held:
The Court is of the opinion that there was a willful trespass by the agent of Stacks upon the property of the Nicholses.
The Court is of the opinion that the negligence of Stacks and indifference and lack of good faith are so evident that it is equivalent to willfulness.
Vol. V., p. 623.
The chancellor went on to hold, however, that more precision or certainty is required under this statute as to the kind and number of trees cut than would be the case in an ordinary suit for damages. In this holding the chancellor erred; our decisions make no such requirement.
The burden cast upon a plaintiff to secure an award under this penal statute is to show lack of good faith, gross negligence or willful misconduct on the part of the defendant in inflicting the damage. He is not additionally burdened to show with greater precision the amount of the damages than would be the case in an ordinary damage suit.
Our inquiry must then be whether under conventional principles of damages the plaintiffs offered sufficient evidence for a fact finder to make some award under the statute. We find there was.
When the plaintiffs offered proof that in a precisely measured area all trees thereon had been destroyed and removed, and all signs thereof obliterated by the *1038 defendant; that they were familiar with the kind and size of the trees destroyed; that in an area immediately adjacent to the obliterated area the trees were of the same kind and size; that a sufficient portion of the adjacent area containing trees of the same kind and size of the trees in the destroyed area had been precisely measured and the trees thereon actually counted so as to determine a fair ratio or comparison with the destroyed area, they offered as much evidence as they could have under the circumstances as to the number and kind of trees destroyed. They further offered sufficient evidence upon which a monetary award could be made under the statute. Such proof is beyond pure speculation or guess.
In Merritt v. Duett, 455 So.2d 792, 793 (Miss. 1984), we stated:
The rule that damages, if uncertain, cannot be recovered applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent recovery.
In Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984), Justice Prather, speaking for this Court, further refined this rule in stating:
... [W]here it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence  with such certainty as the nature of the particular case may permit  lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss. [Emphasis added]
As noted in Cain, and emphasized in Thomas v. Global Boat Builders & Repairmen, Inc., 482 So.2d 1112 (Miss. 1986), a plaintiff under this rule cannot ignore information, methods and procedures available to him whereby he can accurately prove the amount of monetary damages and make a jury issue simply by testimony that he did suffer property damage. On the other hand, a plaintiff who has unquestionably suffered a pecuniary loss, and has produced the best evidence available to him, should not be denied recovery because the amount cannot be ascertained with the same precision as an ordinary claim for damages. Under these circumstances he is only required to put on sufficient proof to enable the fact finder to reach a fair and reasonable estimate of the damages. Cain, supra. This rule has poignant application in such a case as this. Not only did the employees of Stacks cause the damage, they removed the very evidence which would have enabled the plaintiffs to determine the number of trees cut with any precision. As stated by the U.S. Supreme Court in Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652, 660 (1945):
It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.
The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.
And, as also stated by the U.S. Supreme Court in Story Parchment Co. v. Patterson Parchment Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544, 548 (1930):
In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result may be only approximate. *1039 The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise ... . the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party.
We therefore conclude that sufficient evidence was presented for the chancellor to make an award in some amount under the statute. Because the chancellor did not weigh this evidence but rejected it entirely, we remand for his determination as to the amount of damages proved, under the above enunciated standard.
Since, concededly, the best the plaintiffs or anyone else will be able to do under the circumstances of this case can be no more than a "fair and reasonable estimate," Cain, supra, or a "just and reasonable inference," Story Parchment, supra, the weight, credibility and worth of the comparative measurement or measurements and calculations upon rehearing in determining the amount of the monetary award will rest solely with the chancellor. We go no further at this time than to hold that an award in some amount under the statute is proper.
Upon rehearing both sides will be given the opportunity to make additional measurements and calculations if they desire and present evidence thereof in court. We also call to the attention of the chancellor the definition of a tree this Court set forth in Clay v. Postal Telegraph-Cable Co., 70 Miss. 406, 411, 11 So. 658 (1892):
A shrub is a low, small plant, whose branches grow directly from the earth, without any supporting trunk or stem. A tree is a woody plant, whose branches spring from and are supported upon a trunk or body  and the tree may be young or old, small or great. Undergrowth is a term applicable to plants growing under or below other plants.
We find no merit in the cross-appeal, and no assignment of error thereunder warranting discussion.
The decree of the chancery court insofar as it awards statutory damages for destruction of 55 pines is affirmed, and that portion denying statutory damages for the remaining trees destroyed is reversed and remanded for proceedings consistent with this opinion.
Affirmed on cross-appeal, affirmed in part and reversed in part on direct appeal.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The record is not clear as to precisely how the measurements were made and the trees counted. The chancellor, however, apparently had no difficulty in following the computation by Nichols. Upon retrial it will be incumbent upon the plaintiffs to make measurements and count the trees in accordance with the standard hereinafter set forth.